Thomas Phillip NEHEZ, Petitioner,

v.

NATIONAL TRANSPORTATION SAFE-
TY BOARD; and Administrator, Feder-
al Aviation Administration, Respon-
dents.

No. 93–70764.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1994.

Decided July 26, 1994.

Thomas A. Peppler, Phoenix, AZ, for peti-
tioner.

James W. Tegtmeier, Office of Chief Coun-
sel, Federal Aviation Administration, Wash-
ington, DC, for respondents.

Before: HUG, SCHROEDER, and
FERNANDEZ, Circuit Judges.

Opinion by Judge SCHROEDER.

SCHROEDER, Circuit Judge:

Thomas Phillip Nehez petitions for review
of the National Transportation Safety
Board's ("NTSB") decision that he violated
Federal Aviation Regulation 91.9. He con-
tends that there was no evidence that he had
"endangered the life or property of another"
within the meaning of that regulation.[1] He
also contends that the Administrator's sanc-
tion, suspension of his airline transport pilot's
license for thirty days, was arbitrary and
capricious. We affirm because the NTSB
applied the correct standard in determining
that Nehez violated § 91.9, because its deci-
sion is supported by the evidence, and be-
cause we need not consider the severity of

---

1. 14 C.F.R. § 91.9 (1990), renumbered at 14
C.F.R. § 91.13(a) (1993), reads:
  (a) **Aircraft operations for the purpose of air
navigation.** No person may operate an air-

craft in a careless or reckless manner so as to
endanger the life or property of another.

the sanction in light of the fact that the sanction has been waived and will never be imposed.

On January 6, 1990, Thomas Nehez served as the second in command on America West Airlines flight 19 departing from Des Moines, Iowa. According to Federal Aviation Administration ("FAA") regulations, a pilot executing a take-off must comply with the visibility requirements set forth in each airline's FAA-approved operations specifications manual. For this particular flight, America West operations specifications required a runway visual range ("RVR") of at least 1,600 feet.[2] Although RVR monitoring equipment is not available for all runways, America West specifications require that RVR measurements be used whenever possible.

At the time of Nehez's departure from runway 30R at the Des Moines airport, the RVR for that runway was 800 feet, well below the 1,600–foot minimum established by America West specifications. Nehez believed, however, that he needed only 600 feet of visibility in order to depart at that time, and therefore proceeded to execute the take-off. Nehez does not dispute the NTSB's finding that he violated FAR § 121.651, which provides that "[n]o pilot may begin a takeoff in an airplane when the weather conditions reported by the U.S. National Weather Service ... are less than those specified in ... the certificate holder's operation specifications[.]" 14 C.F.R. § 121.651(a). He does argue, however, that his actions did not constitute the more serious FAR § 91.9 violation.

■ The principal legal issue presented in this petition is whether the Board applied the correct standard in finding that Nehez violated FAR § 91.9 because he created a "potential for endangerment to life or property." *Administrator v. Nehez*, NTSB Order No. EA–3869 at 3–4 (1993). That standard was recognized by this court in *Cobb v. NTSB*, 572 F.2d 202, 203 n. 3 (9th Cir.1977) (per

curiam), among other cases, and has been consistently applied by the Board in fixed-wing aircraft cases. Relying upon *Essery v. Department of Transportation*, 857 F.2d 1286, 1290 (9th Cir.1988), Nehez contends, however, that the FAA was required to show "either that the likelihood of potential harm was unacceptably high or that the pilot's ... judgment ... was clearly deficient."

In *Essery*, this court looked to *Administrator v. Reynolds*, NTSB Order No. EA–1770 (1982), where the Board applied the "unacceptability high risk" standard in a case involving helicopters. Although *Essery* involved both a helicopter maneuver and a fixed-wing aircraft maneuver, we applied the *Reynolds* standard to both aircraft in upholding the NTSB's decision that § 91.9 had been violated. We said:

> In *Administrator v. Reynolds*, NTSB Order No. EA–1770 (1982), the NTSB acknowledged that a FAR § 91.9 violation is not established simply by pointing to the potential harm that might have occurred as a result of an aircraft operation. The Administrator must show either that the likelihood of potential harm was unacceptably high or that the pilot's exercise of judgment in the matter was clearly deficient. Sufficient evidence in the record exists to establish that both operations violated FAR § 91.9.

Nehez contends that in *Essery* we announced a new interpretation of § 91.9 that conflicted with prior Ninth Circuit decisions applying the same "potential for harm" standard that the Board applied here. NTSB Order No. EA–3869 at 4–5. We do not agree. In *Essery* we were endeavoring to apply the standard we understood the Board to have formulated. The standard was not disputed in *Essery* and made no difference to the result. The Board has subsequently explained that the *Reynolds* standard we used in *Essery* is only applicable to incidents in-

2. An RVR is a report of runway visibility that is measured parallel and proximate to a particular runway. Each RVR report is generated from a pair of towers, called transmissometers, between which a beam of light is directed. The transmissometers measure the degree to which airborne particles, such as fog, snow or rain impede the beam of light, resulting in a visibility rating which is transmitted constantly to the National Weather Service as well as to a digital RVR readout in the air traffic control tower. When visibility is restricted, air traffic control reads the RVR to pilots for all departures and landings.

volving helicopters, because ensuring safety in helicopter maneuvers requires allowing the pilot a degree of flexibility and discretion that need not be afforded the pilots of fixed-wing aircraft. As the Board noted in the instant case, "we can state unequivocally that the *Reynolds* standard was intended to apply only to helicopter operations and is therefore inapposite to the case *sub judice.*" *Administrator v. Erickson and Nehez,* NTSB Order No. EA–3869 at 4 n. 5. *See also Administrator v. Eckstine,* NTSB Order No. EA–4064 at 2 n. 2 (1994); *Administrator v. King,* NTSB Order No. EA–3861 (1993). Accordingly, the Board did not apply the wrong standard in this case and *Essery* does not require us to hold otherwise.

█ Nehez also contends that even if the Board used the correct standard in his case, the Board's decision is unsupported by the evidence. He asserts that there was no evidence that he created a potential for harm, because he could actually see 2,000 feet at the time of takeoff. He also points out that the RVR minimums for each flight vary among different airlines, and that at Des Moines Airport runway 23, where no RVR equipment was available, his takeoff would not have violated any governing safety provision.

These factors are not persuasive, however. Nehez concedes that he was required to abide by America West's safety operations specifications, which provide that when RVR monitoring reports are available, they are to be used. The evidence calls into question Nehez's contention that he actually had 2,000 feet of visibility. The weather conditions at the Des Moines airport at the time were fast moving, with intermittent rain and drizzle; the available RVR monitoring equipment indicated a visibility range of only 800 feet at the time of takeoff. The possible safety of a takeoff on another runway was irrelevant to the takeoff on runway 30R, where the weather conditions may well have been slightly different.

The essential fact is that Nehez carelessly failed accurately to ascertain the minimum visibility required for takeoff in that particular plane at that time, and as a result executed a takeoff with only half of the visibility required for the procedure. We cannot say that this carelessness created no potential for harm to Nehez's aircraft or its passengers. The Board's finding of potential for harm is supported by the evidence.

Nehez's reliance on *Administrator v. Westhoff,* NTSB Order No. EA–3596 (1992) is unavailing. In that case a pilot executing a "power back" maneuver rolled the plane off the runway so that the one gear became stuck in the mud. The Board found that whatever carelessness the pilot may have exhibited did not place the plane or the passengers in any potential danger. The pilot's negligence did not violate any regulation designed to preserve the safety of passengers. Nor did it create any conceivable threat to airplanes in flight. This case is materially different.

█ Finally, Nehez contends that the FAA's decision to suspend his pilot's license for 30 days as a sanction was arbitrary and capricious. At Nehez's hearing, however, the ALJ did not impose the FAA's order of suspension because the parties stipulated that Nehez had timely filed a report with the Aviation Safety Reporting Program ("ASRP"), and was therefore entitled to a waiver of sanction. The NTSB then refused to consider the propriety of the sanction because it had been waived under the ASRP, citing *Administrator v. Friday,* NTSB Order No. EA–2894 (1989). Although Nehez continues to urge that a 30–day suspension is an unreasonable sanction for his conduct, he does not contest the Board's decision that a waived sanction is unreviewable. We therefore similarly decline to consider the issue.

AFFIRMED.