**William ALLEN and Lynn Allen, Plaintiffs,**

v.

**AMERICAN AIRLINES, INC. Defendant.**

**No. Civ.A. 03–CV–359.**

United States District Court, E.D. Pennsylvania.

Sept. 24, 2003.

tutional right,'' establishing entitlement to a certificate. *See* 28 U.S.C. § 2253(c)(2). The court follows this approach here.

Vincent F. Presto, Law Offices of Vincent F. Presto, Philadelphia, PA, for Plaintiff.

David N. Zeehandelaar, Kira F. Spaman, Blank Rome Comisky & McCauley LLP, Philadelphia, PA, for Defendant.

### *MEMORANDUM*

BAYLSON, District Judge.

William and Lynn Allen have sued American Airlines, Inc. ("American Airlines" or "Defendant"), asserting claims of negligence and loss of consortium, respectively. Presently before the Court is Defendant's Motion for Summary Judgment. Oral argument was held on September 15, 2003. For the following reasons, Defendant's Motion is granted.

## I. Factual and Procedural Background

On January 4, 2001, William Allen ("Plaintiff") [1] flew from Jackson, Wyoming to Philadelphia, with a connection in Chica-

---

1. Even though William Allen's wife, Lynn Allen, has filed a separate claim against Ameri- can Airlines for loss of consortium, the Court

go, on American Airlines. (Pls.' First Am. Compl. ¶ 6; Pl.'s Dep. at 33.) When the airplane had arrived at or near the Philadelphia terminal, but before the seatbelt sign was turned off, and before any other signal that the passengers were authorized to disembark, an unidentified passenger seated behind Plaintiff stood to retrieve his luggage from the overhead bin. (*Id.* at 39–41.) According to Plaintiff, the passenger stood for approximately ten seconds while the "Fasten Seat Belts" sign remained illuminated (Pl.'s Decl. ¶ 3; Pl.'s Dep. at 40); no flight attendant reprimanded or approached the passenger. (Pl.'s Decl. ¶ 2.) This passenger opened the overhead luggage compartment. A laptop computer bag fell from the overhead luggage compartment and "conked" Mr. Allen "in the head." (Pl.'s Dep. at 42.)

Plaintiff is suing American Airlines for negligence, and Lynn Allen's suit for loss of consortium is derivative of that claim. Jurisdiction is appropriate under 28 U.S.C. § 1332(a). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, American Airlines has filed a motion for Summary Judgment, which is currently before the Court.

## II. Issue

Whether there is a genuine issue of material fact as to whether any reckless or careless behavior attributable to Defendant actually and proximately caused Plaintiff's injuries.

## III. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genu-

ine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## IV. Discussion

### A. Defendant's Contentions

Defendant contends that summary judgment is appropriate for three reasons.

intends "William Allen" wherever it refers to "Plaintiff" throughout this memorandum.

One, American Airlines asserts that Plaintiff has failed to set forth an applicable standard of care under federal law that articulates the duty, if any, Defendant owed Plaintiff. Two, Defendant claims that Plaintiff cannot identify any negligent conduct by American Airlines on January 4, 2001 that constituted a breach of any duty owed Plaintiff and that legally caused his injury. Three, Defendant contends, more specifically, that Plaintiff's "failure to warn" argument should fail because Plaintiff cannot prove that American Airlines was obligated to give any pre-disembarkation warning, or that the absence of such a warning caused Plaintiff's injuries.

### B. Plaintiff's Contentions

Plaintiff responds that summary judgment is inappropriate for three reasons. One, Plaintiff cites two federal regulations that he believes are applicable to the instant case and that he contends formulate the standard of care Defendant owed him. Two, Plaintiff asserts that Defendant acted negligently by failing at least to order or request the unidentified passenger verbally to remain seated, and by carelessly allowing its overhead compartments to become overloaded. Three, Plaintiff contends that Defendant did not announce its standard pre-disembarkation warning, and if it had, he would have taken certain precautionary measures that would have prevented the incident.

### C. Plaintiff's Negligence Claim

■ Plaintiff has sued American Airlines for negligence in the operation of its aircraft. A common carrier owes a high duty of care to its passengers. *See, e.g., Robinson v. N.W. Airlines, Inc.,* No. 94–

2392, 79 F.3d 1148, 1996 WL 117512, at *3, 1996 U.S.App. LEXIS 8237, at *5 (6th Cir. Mar. 15, 1996). However, common carriers are not insurers of their passengers' safety. *Id.* Passengers-plaintiffs must demonstrate that injuries arising from their relationship with the common carrier are attributable to the latter's negligence. *Id.* To establish a claim for negligence, Plaintiff must show: 1) a duty owed him by American Airlines; 2) a breach of that duty; 3) that the breach actually and proximately caused his injuries; and 4) damages. *See, e.g., Brisbine v. Outside in Sch. of Experiential Educ., Inc.,* 799 A.2d 89, 93 (Pa.Super.Ct.2002). Plaintiff has the burden to establish each element of the case. *Id.*

#### i. Whether Defendant Owed a Duty to Plaintiff

■ The Court must first decide whether Plaintiff has articulated a particular standard of care that governs the instant case. Because the alleged incident occurred on an airplane, there is an extra wrinkle to the disposition of this threshold inquiry. Notwithstanding uncertainty elsewhere,[2] the Third Circuit *has* decided that the Federal Aviation Act ("FAA") "establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation." *Abdullah v. Am. Airlines, Inc.,* 181 F.3d 363, 367 (3d Cir. 1999). Since this Court is obligated to adhere to Third Circuit rulings, Plaintiff must base his negligence claim upon a federal standard of care, as prescribed within the FAA.

■ The parties agree there exists no FAA regulation pertaining specifically to

---

**2.** Courts disagree whether and to what degree the FAA preempts state regulation of air safety standards. *Compare Curtin v. Port Auth. of N.Y. & N.J.,* 183 F.Supp.2d 664, 669–670, 671 (S.D.N.Y.2002) (distinguishing Second Circuit precedent long cited to justify non-preemp-

tion and favorably discussing the preemption analyses of the First and Third Circuits) *with Sakellaridis v. Polar Air Cargo, Inc.,* 104 F.Supp.2d 160, 163 (E.D.N.Y.2000) (relying on very same Second Circuit precedent to justify non-preemption).

passengers who ignore illuminated warnings while the flight crew prepares for disembarkation. (Def.'s Mem. Supp. Summ. J. at 5; Pl.'s Mem. Opp'n Summ. J. at 4–6.) However, Plaintiff refers the Court to 14 C.F.R. § 91.13(a), which provides, "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." Under Third Circuit case law, such reliance and reference to this general overall requirement of careful operation is appropriate when no precise regulation exists. As *Abdullah* states,

> [I]n determining the standards of care in an aviation negligence action, a court must refer not only to specific regulations but also to the overall concept that aircraft may not be operated in a careless or reckless manner. The applicable standard of care is not limited to a particular regulation of a specific area; it expands to encompass the issue of whether the overall operation or conduct in question was careless or reckless.

181 F.3d at 371. The Court concludes that Plaintiff has demonstrated that an applicable, albeit non-specific, federal standard pertains generally to his claim. Therefore, Plaintiff has sufficiently distinguished the instant case from such precedent as *Margolies Mezvinsky v. U.S. Air Corp.*, No. 98–1526, 2000 WL 122355, 2000 U.S. Dist. LEXIS 736 (E.D.Pa. Feb. 1, 2000), where summary judgment was granted for failure to articulate a federal standard of care.

█ Plaintiff also refers the Court to 14 C.F.R. § 91.519 as an additional standard of care proper for the instant case. This regulation concerns a pilot's affirmative duty to brief his passengers on the use of safety belts and shoulder harnesses. § 91.519 provides,

> (a) *Before each takeoff* the pilot in command on an airplane carrying passengers shall ensure that all passengers have been orally briefed on -

> . . .

> (2) Use of safety belts and shoulder harnesses. Each passenger shall be briefed on when, where, and under what conditions it is necessary to have his or her safety belt and, if installed, his or her shoulder harness fastened about him or her. This briefing shall include a statement, as appropriate, that Federal Aviation Regulations require passenger compliance with the lighted passenger sign and/or crewmember instructions with regard to these items. . . .

14 C.F.R. § 91.519 (emphasis added). However, since this regulation imposes a pre-takeoff obligation and the accident in question occurred immediately prior to disembarkation, the regulation does not apply to the instant case. Any duty owed Plaintiff would be found within 14 C.F.R. § 91.13(a) and not within § 91.519. Therefore, Plaintiff's assertion that Defendant's alleged failure to brief its passengers upon arrival at Philadelphia constituted a violation of § 91.519 is unsupported.

### ii. Whether Defendant Breached Its Duty to Plaintiff

█ Citation of a standard of care owed by a defendant to a plaintiff will not automatically insulate the plaintiff's complaint from summary judgment. The plaintiff has the burden to show a genuine issue of fact for trial as to each element of his case. In addition to articulating the applicable federal standard of care, Plaintiff also bears the burden of demonstrating behavior attributable to Defendant that constituted a breach of this duty not to operate an aircraft recklessly or carelessly. As other courts have defined and applied § 91.13(a), Plaintiff can identify no act or omission by Defendant that violates the regulation.

Identifying a breach is a difficult task for Plaintiff for several reasons. While the regulation provides a general, overriding standard of care for airline safety,

the regulation does not contain much express guidance. The conspicuous lack of clear statutory language makes identifying violations thereof even more difficult. For example, in determining that a negligence *per se* claim could not rest upon § 91.13(a), a Texas District Court found that § 91.13(a) "is clearly aimed at safety but it does not require specific conduct...." *Skidmore v. Delta Air Lines, Inc.*, No. 3:99–CV–2958–G, 2000 WL 1844675, at *4, 2000 U.S. Dist. LEXIS 18587, at *16 (N.D.Tex. Dec. 15, 2000) (quoting *King v. Avtech Aviation, Inc.*, 655 F.2d 77, 79 (5th Cir.1981)). *But see Thomas v. Hinson*, 74 F.3d 888, 889 (8th Cir.1996) ("[91.13(a)] was clear enough to give [a nonflying co-pilot] notice that any careless conduct on his part was prohibited").

Secondly, because courts nationwide diverge on whether 14 C.F.R. § 91.13(a) is the standard of care governing situations otherwise actionable under common law negligence theory, there simply is not much precedent that scrutinizes § 91.13(a) under the present circumstances and clarifies which airline acts or omissions constitute breaches thereof. Simply put, the Court has not discovered any case law that addresses this factual situation and answers whether the combination of failing luggage and injured passengers constitutes a violation of § 91.13(a). Neither party presented any case law indicating that § 91.13(a) clearly was or was not violated under these facts.[3]

This is not to say that no court ever has addressed 14 C.F.R. § 91.13(a), rather that no court ever has addressed the regulation under facts comparable to the instant case. In fact, numerous opinions refer to the precise regulation, and many courts have adjudicated cases involving allegedly careless and reckless operation of

aircraft. Reference to those cases convinces the Court that Plaintiff asserts nothing comparable to warrant finding a breach. In those cases that have positively identified § 91.13(a) violations, the behavior alleged was far more extreme and carried far graver consequences than Defendant's challenged conduct here. The Court does not intend to be dismissive of or insensitive to Plaintiff's stated injuries and trauma; however, the fact that Plaintiff was injured does not mean Defendant violated any standard of care or that Defendant's acts or omissions caused Plaintiff's injuries.

For example, in *Nehez v. Administrator*, 30 F.3d 1165 (9th Cir.1994), the court upheld the National Transportation Safety Board's decision that a commercial pilot "endangered the life or property of another" in violation of § 91.13(a) when he executed a takeoff with only half the runway visibility required by his employer's operations specifications. Of especial interest to the Court is that the *Nehez* pilot did not dispute that he violated the regulation pertaining to runway visibility. 30 F.3d at 1166. Rather, he argued that his actions did not constitute the "more serious" § 91.13(a) violation. *Id.* This language gives rise to the Court's inference that § 91.13(a) is reserved only for egregious misconduct where the potential for harm is incontestably high. Plaintiff cannot contend that falling luggage jeopardizes human safety or property as severely as takeoffs during conspicuously deficient visibility. *See also Watkins v. Nat'l Transp. Safety Bd.*, 178 F.3d 959 (8th Cir.1999) (upholding a § 91.13(a) suspension where a pilot flew into known or forecast severe icing conditions); *Thomas, supra* (upholding a § 91.13(a) suspension where a pilot pulled up a near-landing plane, circled the

---

**3.** This lack of precedent also only strengthens Defendant's contention that no act or omission attributable to American Airlines represents a breach of any duty owed toward Plaintiff, whether that duty originates from federal regulation or common law negligence theory.

airport again, and scraped the propeller against the runway during final landing); *Wells v. Nat'l Transp. Safety Bd.*, No. 95–1037, 79 F.3d 169, 1996 WL 104400, 1996 U.S.App. LEXIS 3690 (D.C.Cir. Feb. 12, 1996) (upholding a § 91.13(a) suspension where a pilot executed a takeoff from a runway closed for construction); *Johnson v. Nat'l Transp. Safety Bd.*, 979 F.2d 618 (7th Cir.1992) (upholding a § 91.13(a) suspension where a pilot allowed his co-pilot to operate the airplane while under the influence of alcohol).

Even *Abdullah*, the Third Circuit case Plaintiff cites to support his general concept that airline operation must neither be careless nor reckless, seems to recognize that § 91.13(a) should be reserved only for serious, more flagrant pilot misconduct. As Plaintiff correctly emphasizes, the *Abdullah* court reminds other courts to refer to "the general overall concept that aircraft may not be operated in a careless or reckless manner" when deciding whether alleged infractions equal aviation negligence. 181 F.3d at 371. Moreover, of apparent relevance to the instant case, the *Abdullah* court describes how expert testimony on seatbelt briefing and illuminated warnings might help juries determine whether the actual airline behavior constituted careless or reckless operation. *Id.* However, the § 91.13(a) violation in *Abdullah* was the pilot's failure to advise passengers to wear seatbelts as the plane fast approached severe turbulence that the pilot knew was of immediate, considerable threat to the passengers. *Id.* Plaintiff's flight had landed, and had stopped at the terminal when the accident occurred (Pl.'s Dep. at 39–40); there simply was no similar threat of imminent, dire physical injury to Plaintiff and his fellow passengers while their plane sat stationary. Again, the Court does not believe that, as a matter of law, Defendant's conduct and the harms allegedly suffered by Plaintiff are of sufficient severity to warrant invocation of § 91.13(a).

Plaintiff refers the Court to *Gee v. Southwest Airlines*, 110 F.3d 1400 (9th Cir.1997), to support his contention that falling luggage and passenger compliance with overhead bin requirements pertain to the safe operation of aircraft, and that, hence, falling luggage and passenger compliance are actionable under § 91.13(a). Plaintiff's interpretation of *Gee* is only partially accurate. Courts within the Ninth Circuit follow the preemption rationale first created in *Harris v. American Airlines, Inc.*, 55 F.3d 1472 (9th Cir.1995), pursuant to which courts distinguish between claims relating to service and those pertaining to the operation and maintenance of the aircraft in deciding whether federal law has preempted traditional common law claims. Because "whether luggage may be placed in overhead bins and whether the flight attendants properly monitor compliance with overhead rack regulations are matters that pertain to the safe operation of a flight,'" the *Gee* court reasoned that the plaintiff's common law tort claims were "not preempted" by the Federal Aviation Act.[4] *Gee*, at 1402 (quoting *Hodges v. Delta Airlines*, 44 F.3d 334, 339 (5th Cir.1995)). The *Gee* court remanded those tort claims and ordered that they be evaluated under the common law standard of care.[5] Thus, Plaintiff fails to explain the applicability of *Gee* to this case. Under the rationale in *Gee*, Plaintiff's claim would be analyzed under the com-

**4.** *Gee v. Southwest Airlines* compiles four separate causes of actions brought by four plaintiffs against three different airlines. Donna Costa—and not Shirley Gee—was the plaintiff who claimed injuries when a suitcase fell from an overhead bin onto her head. However, for ease in reference, the Court refers to Costa as the *Gee* plaintiff.

**5.** Notably, the *Gee* plaintiff's complaint invoked state civil code provisions that would

mon law standard of care. Since courts within the Third Circuit must follow *Abdullah,* a federal standard of care applies and *Gee's* helpfulness is minimized.

Therefore, the Court concludes, as a matter of law, that Plaintiff has not alleged any act or omission by the Defendant that constitutes a violation of § 91.13(a). Defendant has not breached its statutory duty not to operate an aircraft recklessly or carelessly, as nothing supposedly performed, permitted, or ignored by Defendant equates or even approaches the grave, highly endangering actions previously found to have breached § 91.13(a).

### iii. Whether Defendant's Breach, If Any, Is Causally Connected to Plaintiff's Incident or Injury

■ Even if the Court concluded that Defendant's activities breached the duty owed to Plaintiff pursuant to § 91.13(a), Plaintiff still would need to demonstrate a genuine issue of fact for trial that this violation was the actual and legal cause of his injuries. "[T]he breach of a statutory duty does not establish a cause of action in negligence, absent proof of causation...." *Reilly v. Tiergarten, Inc.,* 430 Pa.Super. 10, 633 A.2d 208, 210 (1993) (citations omitted). Plaintiff cannot convince the Court that a rational jury could find that any act or omission by Defendant causally connects American Airlines to his injury.

■ To determine whether there is an issue for trial as to proximate cause, "the court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of." *Reilly,* 633 A.2d at 210 (citations omitted). "The fact that a fellow passenger opened the

compartment 'will not break the necessary chain of causation where [such action is] a normal and foreseeable consequence of the situation created by the defendant's negligence." *Barrera v. Am. Airlines,* 98 Civ. 2685, 2002 WL 1059160, at *2, 2002 U.S. Dist. LEXIS 9394, at *6 (S.D.N.Y. May 24, 2002) (quoting *Aponte v. Trans World Airlines, Inc.,* 94 Civ. 6337, 1996 WL 527339, at *3, 1996 U.S. Dist. LEXIS 13567, at *3 (S.D.N.Y. Sept. 16, 1996)) (alterations in original).

As the Court liberally interprets his claim, Plaintiff identifies three omissions by Defendant as the proximate cause of the incident and his injury. These three alleged omissions are: (1) Defendant's failure to prevent the unidentified passenger from opening the overhead bin, or at least verbally instruct him not to do so; (2) Defendant's failure to pack its overhead luggage compartments safely and properly; and (3) Defendant's failure to issue its pre-disembarkation warning. As mentioned above, the Court does not conclude that any of these actions constituted a breach of Defendant's duty under 14 C.F.R. § 91.13(a). For the reasons discussed below, nor does the Court find, as a matter of law, that Plaintiff's injury would have been foreseen by an ordinary person as the natural and probable outcome of Defendant's three alleged offenses.

### a. Whether Plaintiff is Entitled to a Trial to Prove Defendant's Failure to Prevent the Unidentified Passenger from Opening the Overhead Bin Legally Caused His Incident and Injury

■ Plaintiff argues that American Airlines was negligent because its on-

---

have imposed a higher duty of care on common carriers. Because these provisions represented the state's effort to impose its own substantive standards of airlines, the *Gee* court found that the civil code standard of

care had been preempted by federal law. Still, the *Gee* court ordered that the plaintiff's claim be assessed under the common law standard of care, and not under any federal regulation. *Gee,* at 1407.

flight personnel failed to force or at least demand or request the unidentified passenger to sit down. (Pl.'s Decl. ¶ 3.) According to Plaintiff, ten seconds was sufficient time for it to have been reasonably possible for a flight attendant to have approached the unidentified passenger and to have reminded him to retake his seat. (*Id.*) Defendant allegedly acted carelessly and recklessly by allowing this passenger to disregard illuminated warnings for ten seconds. As asserted by Plaintiff and uncontroverted by Defendant, the unidentified passenger stood and remained standing without flight crew intervention even though the "Fasten Seat Belts" sign was illuminated and in effect. (*Id.;* Def.'s Mem. Supp. Summ. J. at 2.) Plaintiff asserts Defendant's inaction was especially bedeviling because the passenger stood in direct and flagrant violation of the illuminated sign. The Court concludes that the illumination of the sign indicates that Defendant *had* satisfied its duty, if any, to instruct all passengers, including the unidentified one, to remain seated. *See, e.g., Pardo v. Delta Airlines, Inc.,* 767 F.Supp. 26, 28 (D.P.R.1991) ("Through said illuminated sign the unidentified passenger, as all others in the aircraft, was indeed instructed to remain seated."). Federal regulations provide that every passenger fasten his seatbelt when the sign is illuminated, 14 C.F.R. § 121.317(f), and "[t]he federal regulation does not make a passenger's duty dependent on any enhanced warning from the pilots or on whether the flight attendants check whether passengers are wearing their seat belts," or enforce, verbally or physically, the illuminated sign. *Abdullah v. Am. Airlines,* 969 F.Supp. 337, 355 (D.Vi.1997), *remanded by,* 181 F.3d 363 (3d Cir.1999).

### b. Whether Plaintiff is Entitled to a Trial to Prove Defendant's Failure, If Any, to Pack Its Overhead Luggage Compartments Safely and Properly Legally Caused His Incident and Injury

In order to avoid summary judgment, Plaintiff must demonstrate with evidence that Defendant's behavior vis-à-vis the overhead compartment in question legally caused his injury. "Mere speculations and conjectures are clearly not permitted and may not defeat a properly supported motion for summary judgment." *Pardo,* 767 F.Supp. at 28. Several courts have considered overhead compartment-related injuries in the context of summary judgment motions, albeit not in the context of § 91.13(a). In those lawsuits that survived summary judgment, the plaintiffs could identify specific conduct and trace its effects to their injuries. The violations that Plaintiff alleges cannot be traced legally to the incident, thus indicating that Defendant neither actually nor proximately caused Plaintiff's injuries.

Foremost, there is no indication that American Airlines played an active role in loading or unloading the bin. More precisely, no flight attendant placed the computer case inside the compartment; no flight attendant assisted its owner when she first packed it; no flight attendant removed the case; and no flight attendant assisted the unidentified passenger who was removing other luggage when the case slipped and struck Plaintiff. (Pl.'s Dep. at 43.) *See, e.g., Baker v. Delta Airlines, Inc.,* No. 03A01–9312–CV–00431, 1994 WL 283858, at *3, 1994 Tenn.App. LEXIS 341, at *8 (Tenn.Ct.App. June 28, 1994) (reversing summary judgment where the parties disputed whether a flight attendant assisted the fallen briefcase's owner when it was first packed). Nor is there evidence that this particular overhead compartment de-

veloped a reputation for unnatural luggage shifting, or that American Airlines had any reason to suspect that this bin posed a threat to passengers. *See, e.g., Schwamb v. Delta Air Lines, Inc.*, 516 So.2d 452, 462 (La.Ct.App.1987) (finding causation when an item fell from an overhead compartment that had a "particular tendency to become overstuffed" and where the airline knew or should have known about that tendency). When asked whether he had any recollections about the particular bin, Plaintiff responded that nothing stood out in his mind. (Pl.'s Dep. at 45.)

Additionally, as Plaintiff admits, the computer case was not an unusual, bulky carry-on item, (Pl.'s Dep. at 43), the overhead stowage of which should have alerted Defendant to the possibility of accidents and mishaps. *See, e.g., Monter v. Delta Air Lines, Inc.*, 00–CV–0244E(Sr), 2002 WL 1628086, 2002 US. Dist. LEXIS 13868 (W.D.N.Y. June 24, 2002) (denying summary judgment where the airline allowed a passenger to store golf clubs in an overhead compartment); *Barrera*, 2002 WL 1059160, at *2, 2002 US. Dist. LEXIS 9394, at *8 (holding that, even though "an unusual item may create a sufficient risk" to withstand a motion for summary judgment, "there is no negligence . . . when an overhead compartment is used for its normal and intended purpose"); *Baker*, 1994 WL 283858, at *2, 1994 Tenn.App. LEXIS 341, at *8 (reversing summary judgment where the parties disputed whether the fallen briefcase weighed in excess of regulation limits). Plaintiff contends that the bag was "large," but admits that it was just a standard carry-on in dimensions and weight. (Pl.'s Dep. at 42–43.)

· Nor did Plaintiff introduce any evidence that passengers had difficulties packing their belongings into the overhead compartment. (Pl.'s Dep. at 45–46.) Had the passengers been having problems loading their luggage, American Airlines plausibly might have been on notice that the overhead bins were improperly, if not dangerously, packed. *See, e.g., Cherone v. E. Airlines, Inc.*, No. HAR 87–854, 1988 WL 40568, 1988 U.S. Dist. LEXIS 3692 (D.Md. Apr. 18, 1988) (granting summary judgment where a plaintiff could not show that the airline had actual or constructive knowledge of the alleged hazard posed by an overloaded overhead bin). However, even though Plaintiff represents the airplane being moderately crowded with passengers, he does not report that any passengers had problems storing their carry-on luggage in the compartment that stored the computer laptop case. (Pl.'s Dep. at 45.)

Plaintiff has introduced evidence that American Airlines has no official policy regarding what is permitted and not permitted to be stored in its overhead luggage compartments. (Alves Dep. at 29–33.) Plaintiff alleges that the customary practice is not to investigate the contents if the compartment can be closed (*Id.* at 32–33); Plaintiff hopes that such professional indifference and alleged irresponsibility would convince the Court to find legal causation in the instant case. This argument has not survived motions for summary judgment before other courts. For example, in *Robinson v. Northwest Airlines, Inc.*, No. 94–2392, 79 F.3d 1148, 1996 WL 117512, at *2, 1996 U.S.App. LEXIS 8237, at *7 (6th Cir. Mar. 15, 1996), the plaintiff contended during oral arguments that the flight attendants had a duty to "physically touch the bins to ensure that they are shut properly." Even assuming that the defendant owed that exact duty, the *Robinson* court still could not imagine how any breach thereof could have legally caused the plaintiff's injury. *Id. See also Pardo*, 767 F.Supp. at 28 (granting summary judgment where plaintiff argued that an airline had an automatic obligation to check overhead compartments for potential over-

loading). Likewise, the Court cannot avoid the inescapable conclusion that the unidentified passenger—and not the supposedly lax manner with which Defendant maintains its overhead bins—caused Plaintiff's injuries.

### c. Whether Plaintiff is Entitled to a Trial to Prove Defendant's Failure to Issue a Pre–Disembarkation Announcement Legally Caused His Incident and Injury

Plaintiff strenuously contends that Defendant neglected to make its standard pre-disembarkation announcement to its passengers aboard his flight.[6] Defendant has always maintained that flight crew "announced on January 4, 2001—as it does on all flights—that passengers should be careful when opening overhead bins as items may have shifted during flight." (Def.'s Mem. Supp. Summ. J. at 10.) In considering the pending Motion for Summary Judgment, the Court must decide whether this disagreement constitutes a genuine issue of material fact. In making this determination, the Court looks to Plaintiff's legal arguments dependent on this alleged omission.

First, Plaintiff argues that, regardless of whether the announcement was made, the text of Defendant's standard pre-disembarkation announcement fails to satisfy the letter of 14 C.F.R. § 91.519. As mentioned above, the Court does not believe that § 91.519 applies to the instant action. That regulation imposes an affirmative duty on aircraft operators to conduct certain safety briefing *prior to* takeoff. Plaintiff alleges that American Airlines failed to instruct its passengers after landing, a time during which no federal regulation mandates such warnings be given. Had Plaintiff asserted that Defendant failed to brief the cabin before takeoff, then this fact would have been germane and summary judgment would be inappropriate. Though, given Plaintiff's argument, whether Defendant made its standard announcement before disembarkation might be disputed by the parties, but this dispute is not material to the Motion for Summary Judgment.

 Second, Plaintiff's Complaint alleges that Defendant failed to warn Plaintiff and his fellow passengers of those dangers that attend landings.[7] "Where the theory of liability is failure to warn adequately, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident...." *Conti v. Ford Motor Co.*, 743 F.2d 195, 198 (3d Cir.1984). Plaintiff states that had the announcement been properly given and had American Airlines warned its passengers about shifted lug-

---

**6.** The standard announcement given aboard American Airlines flights is, in relevant part:
 Welcome to *(arrival city)*. For your safety, please remain seated with your seatbelt fastened, leaving all carry on items stowed. Keep the aisles clear until the Fasten Seatbelt Sign has been turned off and we are parked at the gate. Please be careful opening overhead bins, as items may have shifted during flight. Before you leave the aircraft, ensure you have all your carry-on items with you.
American Airlines Flight Service, Public Address Announcements for all Aircraft, ENGLISH, April 2003, at 23.

**7.** In its brief, Defendant emphasizes that Plaintiff's "failure to warn" argument should fail since it is not demonstrable that the unidentified passenger would have remained seated had a pre-disembarkation warning been issued. (Def.'s Mem. Supp. Summ. J. at 11.) Plaintiff concedes that such subjective knowledge is unattainable here given the passenger's anonymity. (Pl.'s Dep. at 49.) The Court finds Defendant's argument unpersuasive, especially since Plaintiff has concentrated on *his* response to the pre-disembarkation warning, and not the response of the other passenger.

gage, he would have been reminded to take certain precautionary measures, as were his habit. Plaintiff claims typically "to move his body inward away from and underneath any potential falling objects." (Pl.'s Mem. Opp'n Summ. J. at 8.) Further, Plaintiff alleges that these customary responses would have avoid the particular incident that occurred here. (*Id.* at 2; Pl.'s Dep. at 33.)

Plaintiff's contention that he would have taken these responsive, preventive measures potentially creates a factual dispute properly reserved for a jury's review. However, Defendant convincingly replies that American Airlines had no legal duty to remind Plaintiff of the hazards posed by dislodged, shifted luggage. Generally, anyone's duty to warn another of hazardous or threatening situations is relieved should the dangers posed be known, clear, or obvious. *See Kabo v. UAL, Inc.*, 762 F.Supp. 1190 (E.D.Pa.1991). Under this rationale, had Plaintiff known of the dangers posed by possibly dislodged and shifted luggage in overhead bins—or had those dangers been obvious to him—then American Airlines would have been relieved of its duty to warn Plaintiff.

Plaintiff is a self-acknowledged experienced air traveler; by his estimate, he has traveled by plane about eight times per year for the ten years prior to his incident. (Pl.'s Dep. at 31.) He is member of frequent flyer clubs organized by American Airlines, Delta Airlines, and United Airlines. (*Id.* at 29.) On past flights, he has heard statements and announcements advising passengers of the dangers posed by luggage stored in the overhead compartments. (*Id.* at 48.) While aboard his plane, Plaintiff observed other passengers place their carry-ons inside the overhead bins, and he noticed "[n]othing out of the ordinary." (*Id.* at 45.)

In *Haley v. United Airlines, Inc.*, 728 F.Supp. 374 (D.Md.1989), *aff'd in part, rev'd on other grounds*, No. 89–3350, 1991 WL 27153, 1991 U.S.App. LEXIS 3526 (4th Cir. Mar. 6, 1991), a similarly experienced plaintiff sued an airline for negligence after she was injured by a briefcase that had fallen from an overhead compartment. Another passenger had stood without permission while the plane was taxiing to the gate, and managed to open the compartment from which the briefcase fell before being reminded to sit down. 728 F.Supp. at 375. The *Haley* defendant successfully motioned for summary judgment, partially because Haley—as someone who had used overhead bins, had seen others use overhead bins, and had heard countless pre-disembarkation warnings—appreciated and was aware of the potential danger. *Id.* at 376. The Court concludes that Plaintiff, as a self-acknowledged experienced air traveler, was identically aware of the potential dangers of being hit by objects stored in overhead bins.[8] As such, Defendant's failure to issue its pre-disembarkation warning could not have legally caused Plaintiff's injury.

Plaintiff attempts to distinguish *Haley* from the instant case by emphasizing three supposed factual differences: the *Haley* airline had made pre-disembarkation safety announcements; the flight crew promptly responded to the improperly standing passenger and reminded him to sit down; and the flight crew administered first aid to Haley. 728 F.Supp. at 376. Assuming arguendo that Plaintiff correctly

---

8. Along a similar line of reasoning, the Court believes that Plaintiff, as a self-acknowledged experienced air traveler, was aware of the potential dangers of being hit by standing passengers. Defendant might not even have needed to restrain the unidentified passenger—for Plaintiff's benefit and protection—given that Plaintiff had been aware of his nearby presence for approximately ten seconds.

recounts his flight experience, these factual differences do not persuade the Court, as Plaintiff neglects the crucial issue in "failure to warn" cases. However the *Haley* airline reacted to passengers standing without authorization is irrelevant as to Haley's irrefutable subjective knowledge of the dangers posed by luggage overhead. Similarly, the Court disregards American Airlines' response or supposed lack thereof in determining that Plaintiff's admitted familiarity with air travel relieved Defendant of its duty to warn him of shifted luggage.

### D. Lynn Allen's Loss of Consortium Claim

■ Plaintiff's wife asserts a claim for loss of consortium. "Loss of consortium is defined as a loss of services, society, and conjugal affection of one's spouse. A loss of consortium claim arises from the marital relationship and is premised on the loss of a spouse's services after injury." *Nowosad v. Villanova Univ.*, No. 97–5881, 1999 WL 744017, at *3, 1999 U.S. Dist. LEXIS 14502, at *9–10 (E.D.Pa. Sept. 23, 1999) (citations omitted). In the first amended complaint, Lynn Allen alleges that "on account of the ... negligence of [American Airlines, she] has sustained a loss of aid, assistance, society, affection, and society of Plaintiff, causing great detriment and loss." (Pls.' First Am. Compl. ¶ 14.)

■ "Any action for loss of consortium is derivative, however, and the viability of such a claim depends upon the substantive merit of the injured party's claims." *Nowosad*, 1999 WL 744017, at *3, 1999 U.S. Dist. LEXIS 14502, at *10 (citation omitted). Consequently, where the injured party's substantive claim does not withstand a motion for summary judgment, the spouse's derivative loss of consortium claim cannot survive either. *Id.* As the Court grants summary judgment against her husband, the Court must also order summary judgment against Lynn Allen.

### V. Conclusion

Because there is no genuine issue of material fact as to whether any reckless or careless behavior attributable to Defendant actually and proximately caused Plaintiff's injuries, Defendant's Motion for Summary Judgment should be granted as to both Plaintiff and his wife, Lynn Allen.

An appropriate Order follows.

### ORDER

AND NOW, this 24th day of September, 2003, upon consideration of Defendant's Motion for Summary Judgment (Docket No. 14) and Plaintiffs' Response thereto (Docket No. 15), it is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED, and Judgment is granted in favor of Defendant and against Plaintiffs.