[No. B193417. Second Dist., Div. Six. Jan. 14, 2008.]

BLUE BOOTH et al., Plaintiffs and Appellants, v.
SANTA BARBARA BIPLANE TOURS, LLC, et al., Defendants and
Respondents.

## COUNSEL

Sterns & Walker, Gerald C. Sterns and Eric M. Steinle for Plaintiffs and Appellants.

The Morse Law Group, Jonathan S. Morse and Denise Dickey for Defendants and Respondents.

## OPINION

YEGAN, J.—Blue Booth and his daughter Cassey Booth appeal from a summary judgment granted in favor of respondents Santa Barbara Biplane Tours, LLC, et al., on their complaint for personal injuries. The trial court ruled that the action was barred by a release and waiver of liability agreement. We agree and affirm.

### Facts and Procedural History

In May of 2005, appellants went on an aerial sightseeing tour of Santa Barbara. They sustained injuries when respondents' plane lost power and

made an emergency landing. Appellants signed a release and waiver of liability about 30 minutes before boarding the plane. Prior to the emergency landing, the pilot had made several flights earlier in the day, all without incident.

Appellants sued alleging simple negligence and breach of implied warranty. The complaint stated that respondents acted "as a common carrier on an advertised and promoted sight-seeing tour around Santa Barbara. The contract of carriage was entered into and, among other things, carried an implied warranty of airworthiness of the aircraft, as well as suitability for the use and purposes intended . . . ."

Respondents moved for summary judgment based on the following undisputed facts:

Respondents owned a Waco biplane and provided aerial sightseeing tours by a licensed pilot.

Customers were required to sign a "High Risk Activity Release, Waiver and Assumption of Risk Agreement" before riding in the plane. The release stated in pertinent part that "I UNDERSTAND THAT PARTICIPATION IN BIPLANE OR OTHER AIRCRAFT TOURS IS A HIGH RISK ACTIVITY AND THAT SERIOUS INJURY OR DEATH MAY OCCUR. [¶] 8. **I VOLUNTARILY ASSUME ALL RISK, KNOWN AND UNKNOWN, OF INJURIES, HOWEVER CAUSED, EVEN IF CAUSED IN WHOLE OR IN PART BY THE ACTION, INACTION, OR NEGLIGENCE OF THE RELEASED PARTIES TO THE FULLEST EXTENT ALLOWED BY LAW.**"

*Common Carrier Liability*

■ Civil Code section 2168 provides: "Every one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry."[1] The statute has been broadly construed to include amusement rides, ski lifts, planes and trains, and guided tour mule rides. (*Simon v. Walt Disney World Co.* (2004) 114 Cal.App.4th 1162, 1168 [8 Cal.Rptr.3d 459]; *Squaw Valley Ski Corp. v. Superior Court* (1992) 2 Cal.App.4th 1499, 1506–1508 [3 Cal.Rptr.2d 897]; *McIntyre v. Smoke Tree Ranch Stables* (1962) 205 Cal.App.2d 489,

---

[1] Unless otherwise stated, all further statutory references are to the Civil Code.

492–493 [23 Cal.Rptr. 339].)  ▮  A common carrier, "by special contract," may limit its liability (§ 2174) but not for gross negligence. (§ 2175 ["A common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong of himself or his servants."].) "The prohibition of the common law against a carrier limiting his liability for any kind of negligence is declared in this state by section 2175 only to apply to the limitation for gross negligence." (*Donlon Bros. v. Southern Pacific Co.* (1907) 151 Cal. 763, 770 [91 P. 603].)

▮  The trial court ruled that the release was a special contract within the meaning of section 2174. It did not err.

Appellants argue that respondents violated federal aviation regulations by operating an unairworthy plane. But that is not what is alleged. The complaint only alleges simple negligence and breach of implied warranty. It does not allege the violation of any law or regulation. On a motion for summary judgment, the pleadings define the issues. (*Wood v. Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1119 [31 Cal.Rptr.2d 8].) Appellants may not interject new theories of liability on appeal. (*Lewinter v. Genmar Industries, Inc.* (1994) 26 Cal.App.4th 1214, 1223 [32 Cal.Rptr.2d 305].)

In their opposition papers, appellants admitted that the pilot and respondents were not cited for doing anything wrong and that respondents had no reason to believe that the aircraft was not airworthy. Like the trial court, we must utilize common sense in drawing inferences from the undisputed facts. (*Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1615 [286 Cal.Rptr. 402].)

Appellants also argue that the release was hurriedly signed, but it is undisputed that they signed the release 30 minutes before the flight. There was no surprise element. Appellants were told that it was "a standard release or standard insurance form" and that their money would be refunded if they decided not to sign the release.

Appellants' opposition papers also include a National Transportation Safety Board accident report discussing engine maintenance problems. The trial court struck the report because it was hearsay and lacked foundation. Appellants do not challenge the evidentiary ruling on appeal and have waived

the issue. (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014–1015 [120 Cal.Rptr.2d 281].) We are precluded from considering the accident report and deny appellants' request to take judicial notice of it.

### Tunkl—*Public Interest Analysis*

■ Appellants cite section 1668 for the principle that contracts exculpating a person from liability for violation of law are void as a matter of public policy. The argument fails because the complaint does not allege that respondents violated a law or regulation. More importantly, section 2175 permits exculpatory agreements affecting the liability of a common carrier. (Code Civ. Proc., § 1859 [specific statute controls over general statute]; *Platzer v. Mammoth Mountain Ski Area* (2002) 104 Cal.App.4th 1253, 1260 [128 Cal.Rptr.2d 885].)

Relying on *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747 [62 Cal.Rptr.3d 527, 161 P.3d 1095], appellants argue that an exculpatory contract releasing a defendant from liability is void on public policy grounds. (*Id.*, at p. 763.) There, a 14-year-old developmentally disabled girl drowned at a city swim program. Our Supreme Court held that a release exculpating a city from liability for "any negligent act" did not extend to acts of gross negligence. (*Id.*, at p. 750.) Citing *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441] (*Tunkl*), the court acknowledged that a release of liability for future ordinary negligence may be "void on public policy grounds *other than those set forth in section 1668*." (*City of Santa Barbara v. Superior Court, supra*, 41 Cal.4th at p. 763.) The court stated that "*Tunkl's* public interest analysis focuses upon the overall transaction—with special emphasis upon the importance of the underlying service or program, and the relative bargaining relationship of the parties . . . ." (*Id.*, at p. 762.)

■ Pursuant to *Tunkl*, the question of whether a general release "affects the public interest, and is thus void as a matter of public policy, requires analysis of the transaction giving rise to the contract—*not* the allegedly negligent conduct by the party invoking the release. [Citation.]" (*Gavin W. v. YMCA of Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 670 [131 Cal.Rptr.2d 168].) In *Tunkl*, a hospital's use of a general release to exculpate itself from liability for the negligent treatment of patients violated public policy because the hospital performed "a service of great importance to the public, which is often a matter of practical necessity for some members of the public." (*Tunkl, supra*, 60 Cal.2d at p. 99, fn. omitted.)

■ Recreational activities such as snow skiing or parachute jumping are not essential services or necessities affecting the public within the meaning of *Tunkl*. (*Platzer v. Mammoth Mountain Ski Area, supra*, 104 Cal.App.4th at pp. 1259–1260, *Paralift, Inc. v. Superior Court* (1993) 23 Cal.App.4th 748, 756–758 [29 Cal.Rptr.2d 177] [release for parachuting activities].) To that list, we add aerial sightseeing tours. "[N]othing in Civil Code sections 2174 and 2175 prevented [respondents] from negotiating a release from liability for ordinary negligence." (*Platzer v. Mammoth Mountain Ski Area, supra*, 104 Cal.App.4th at p. 1258.)

Pursuant to *Tunkl*, common carriers provide an important public service. (*Platzer v. Mammoth Mountain Ski Area, supra*, 104 Cal.App.4th at p. 1259; *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1734 [22 Cal.Rptr.2d 781]; *Okura v. United States Cycling Federation* (1986) 186 Cal.App.3d 1462, 1467 [231 Cal.Rptr. 429].) But not all common carriers are the same. Respondents provide aerial sightseeing tours of Santa Barbara. They are not an air carrier transporting passengers "for compensation between points within this state." (Pub. Util. Code, former § 2741.) Nor is sightseeing a public utility function. (See, e.g., *City of St. Helena v. Pubic Utilities Com.* (2004) 119 Cal.App.4th 793, 803 [14 Cal.Rptr.3d 713] [Wine Train sightseeing excursions not a common carrier service].)

The trial court ruled that the release "is very clearly worded, and is not ambiguous in conveying its purpose and intent. Plaintiffs have cited no authority which would compel the court to reach the conclusion that Congress has preempted the area of releases of liability for airline or airplane passengers . . . . The court further does not believe that the contract at issue was in the public interest, within the meaning of *Tunkl v. Regents of California*[, *supra*,] 60 Cal.2d 92 and declines to invalidate the release on that ground. Defendants do not provide an essential service, and there was no obligation or compulsion for plaintiffs to go on a sightseeing flight over Santa Barbara."

■ We concur with the trial court's well-reasoned ruling. There are many ways to go on a sightseeing tour, whether it be by plane, hot air balloon, boat, or bus. Appellant cites no authority that a recreational airplane ride is an essential service affecting the public interest that comes within the purview of *Tunkl*. Whether the activity affects the public interest is objectively determined. (*Buchan v. United States Cycling Federation, Inc.* (1991) 227 Cal.App.3d 134, 151 [277 Cal.Rptr. 887].) Appellants' "particular interest in the activity has no bearing on whether the 'public interest' is involved. The issue is tested *objectively*, by the activity's importance to the *general public*,

not by its subjective importance to the particular plaintiff. [Citation.]" (Haning & Flahavan, Cal. Practice Guide: Personal Injury (The Rutter Group 2006) ¶ 3:240.17, pp. 3-186 to 3-187.)

### Federal Preemption—Federal Standard of Care v. State Remedy

Citing *Montalvo v. Spirit Airlines* (9th Cir. 2007) 508 F.3d 464 (*Montalvo*), appellants claim that Congress has preempted the field of air safety which requires reversal of the summary judgment order. We disagree that reversal is required. In *Montalvo*, plaintiffs sued for negligence pursuant to California common law, based on the theory that airlines breached a duty of care in not warning about the risk of deep vein thrombosis (DVT) on long flights. The airlines were granted summary judgment because they were under no obligation to warn of DVT absent a federal mandate to do so.

The *Montalvo* court held that Congress, in enacting of the Federal Aviation Act of 1958 (FAA; 49 U.S.C. § 40103 et seq.), had preempted the entire field of air safety.[2] (*Montalvo, supra,* 508 F.3d at p. 468.) "[I]t is clear that Congress intended to invest the Administrator of the Federal Aviation Administration with the authority to enact exclusive air safety standards. Moreover, the Administrator has chosen to exercise this authority by issuing such pervasive regulations that we can infer a preemptive intent to displace all state law on the subject of air safety. [Citation.] These regulations codified in Title 14 of the Code of Federal Regulations, cover, *inter alia*, airworthiness standards, crew certification and medical standards, and aircraft operating requirements. The regulations also include a general federal standard of care for aircraft operators, requiring that 'no person may operate an aircraft in a *careless or reckless manner* so as to endanger the life or property of another.' 14 C.F.R. § 91.13(a) (2003)." (*Id.,* at p. 472, italics added.)

■ Based on *Montalvo,* appellants now argue that air safety is a strict liability tort because passenger injuries can always be attributed to someone's "carelessness." But that is not what *Montalvo* holds. Because the FAA preempts the field of air safety, a state may not expand the federal standards by imposing a common law duty of care. In *Montalvo* the failure to warn passengers of the risk of DVT injuries may have been careless, but no duty of care was breached.

---

[2] "There are two types of implied preemption: conflict preemption and field preemption. Courts may find conflict preemption when a state law actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law. [Citations.] . . . [F]ield preemption occurs when Congress indicates in some manner an intent to occupy a given field to the exclusion of state law. [Citation.]" (*Montalvo, supra,* 508 F.3d at p. 470.)

Like the plaintiffs in *Montalvo*, appellants may not reinterpret FAA regulations to create a "strict liability" standard of care. Federal courts have held that 14 Code of Federal Regulations part 91.13(a) (2008) is reserved for serious misconduct where the potential for harm is incontestably high. (*Allen v. American Airlines, Inc.* (E.D.Pa. 2003) 301 F.Supp.2d 370, 376 [falling luggage not "careless" conduct].) Even *Abdullah v. American Airlines, Inc.* (3rd Cir. 1999) 181 F.3d 363, the Third Circuit case appellants cite to support their general concept that airline operation must neither be careless nor reckless, seems to recognize that part 91.13(a) should be reserved only for serious, more flagrant pilot misconduct. (*Allen v. American Airlines, Inc., supra*, 301 F.Supp.2d at p. 377.)

### The State Remedy

■ Although federal law sets the standards for aviation safety, state law causes of action may be invoked where the violation of those federal standards result in personal injury or death. Under the FAA there is no federal remedy for personal injury or death caused by the operation of aircraft. (*Abdullah v. American Airlines, Inc., supra*, 181 F.3d at p. 375.) The FAA has a savings clause which provides that "[a] remedy under this part is in addition to any other remedies provided by law." (49 U.S.C. § 40120(c); see *Abdullah v. American Airlines, Inc., supra*, 181 F.3d at pp. 375–376.) "[I]n spite of the fact that federal law may have completely occupied the field of regulation of aircraft safety" remedies that a party may have under state law are not necessarily abridged by the FAA. (*Elsworth v. Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 549 [208 Cal.Rptr. 874, 691 P.2d 630].) Because state law causes of action may be invoked for personal injury resulting from negligence in aviation, state law defenses thereto may also be invoked.

Had appellants sued for gross negligence or recklessness, the release would not be a bar to recovery. (§ 2175; *City of Santa Barbara v. Superior Court, supra*, 41 Cal.4th at pp. 750–751.) But the complaint alleges simple negligence and breach of implied warranty. These causes of action were waived by the preflight release of liability. (See, e.g., *Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 616 [55 Cal.Rptr.2d 818] [general release barred personal injury claim allegedly caused by defendant's negligence and breach of warranty]; *Delta Air Lines, Inc. v. Douglas Aircraft Co., Inc.* (1965) 238 Cal.App.2d 95, 101 [47 Cal.Rptr. 518] [exculpatory clause in contract for sale of aircraft covered tort liability]; *Harrell v. Champlain Enters.* (N.Y.App.Div. 1994) 200 A.D.2d 290, 292 [613 N.Y.S.2d 1002] [release barred wrongful death action and not preempted by the Airline Deregulation Act of 1978 (49 U.S.C. Appen. § 1305(a)(1) governing rates, routes or services of air carrier)].)

The judgment is affirmed. Respondents are awarded costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.

A petition for a rehearing was denied February 5, 2008, and appellants' petition for review by the Supreme Court was denied April 30, 2008, S161142.