[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1287 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1288 
OPINION
 I. INTRODUCTION
Timothy Florez appeals from the probate court's determination, following a trial, that two donative transfers of real property by the decedent were invalid. Appellant contends this action by the administrator is barred by the statute of limitations. We disagree and hence affirm.
 II. FACTUAL AND PROCEDURAL BACKGROUND
Grant William Hastie died on July 6, 2006, at the age of 88. Hastie was the owner and resident of real property commonly known as 3712 Anza Way, San Leandro, California (the Anza Property). Hastie was survived by no spouse, no issue, no parents or issue of parents, and no grandparents or issue of grandparents. The only two known heirs are James D. McCarty and David W. McCarty (the McCartys), sons of his predeceased spouse, Mamie L. Hastie, who died on June 3, 1998. For the last 12 years of his life, Hastie was in poor health and was unable to take care of his personal and financial affairs. *Page 1289 
For decades there was a close relationship between decedent and defendant Bingham Liverman. Liverman had a real estate background including some probate matters. A fiduciary relationship developed when Hastie granted Liverman power of attorney in October 1999 and existed continuously at all times relevant to this action, up to and including the date of Hastie's death. Liverman paid Hastie's bills by writing checks on his behalf, and assisted Hastie in financial matters. Hastie paid Liverman $4,000 per year for his services.
In 2000, Liverman drafted a change in beneficiary form, in his own handwriting, for execution by Hastie on May 6, 2000, naming Liverman and his daughter, Carmen Florez, [1] the beneficiaries of Hastie's $150,000 insurance annuity.
In 2001, Liverman arranged for Carmen to become an in-home caregiver for Hastie. She worked in this capacity for Hastie from 2001 until two months before his death in 2006. For her services, she was paid $1,500 per month plus a lump sum payment of $90,000.
In 2001, Liverman suggested that Hastie transfer an interest in the Anza Property to Liverman's granddaughter and Carmen's daughter, Jenny, by executing a joint tenancy grant deed in her favor. Hastie executed the deed on June 13, 2001. It was recorded on March 29, 2002.
In 2006, Liverman suggested that Hastie, while in the hospital a few weeks prior to his death, transfer his remaining interest in the Anza Property to Liverman's grandson and Carmen's son, Timothy (appellant). Liverman drafted a quitclaim deed from Hastie in favor of Timothy. Hastie executed the deed in June 2006. Appellant did not pay anything to Hastie in exchange for the interest in the Anza Property.
In 2006, Liverman secured a second power of attorney from Hastie while Hastie was in the hospital just prior to his death.
In 2006, Liverman wrote a letter to the McCartys immediately after Hastie's death, informing them that his relationship with Hastie was not charitable, but rather was that of a caretaker, legal guardian, a business matter, and in expectation of compensation. *Page 1290 
The McCartys hired George Weinkauf[2] as their attorney to bring any claims they might have as heirs of the estate. The McCartys nominated George's brother, Steven Weinkauf, also an attorney, to act as the administrator of Hastie's estate. On January 4, 2008, the court issued letters of administration to Steven as administrator. Steven has no other relationship to the decedent and he has no other role in this action.
On August 29, 2007, Steven, as administrator, filed a complaint and, on May 9, 2008, a second amended complaint seeking, inter alia, a judicial determination that certain deeds to members of Liverman's family were invalid. The complaint named as defendants Liverman, Carmen, Jenny, and appellant.
The administrator and appellant litigated cross-motions for summary adjudication. The administrator's motion sought a determination pursuant to Probate Code section 21350[3] that (1) the donative transfer of the Anza Property to Jenny as evidenced by the grant deed dated June 13, 2001 (the 2001 grant deed), was invalid; (2) the donative transfer of the Anza Property to appellant as evidenced by the quitclaim deed dated June 6, 2006 (the 2006 grant deed), was invalid; (3) the grant deed from Jenny transferring her interest in the Anza Property to appellant dated February 20, 2007, was invalid because it was based on the invalid 2001 grant deed to Jenny; and (4) the deed of trust from appellant in favor of Liverman dated March 22, 2007, was invalid because it was based on the invalid deeds to appellant.
Appellant's sole defense to the administrator's motion, and the sole basis for his own motion, was his assertion that the administrator's action was barred by the statute of limitations.
After the hearing on the summary adjudication motions, the probate court declared the 2001 and 2006 deeds to be invalid. The court also declared the 2007 grant deed and the 2007 deed of trust invalid because they were based on the invalid 2001 and 2006 deeds.
Following a court trial on October 26, 2009, the court ordered the return of assets, including the Anza Property, to the estate and awarded judgment against Liverman in the amount of $150,000 for taking decedent's retirement annuity. The judgment was filed and entered on November 30, 2009. *Page 1291 
Appellant filed a timely notice of appeal on December 7, 2009.[4]
 III. DISCUSSION
A. Standard of Review
"A trial court's order granting or denying a motion for summary adjudication is reviewed de novo. (Ojavan Investors, Inc.v. California Coastal Com. (1997) 54 Cal.App.4th 373, 385
[62 Cal.Rptr.2d 803].) In reviewing that order, we apply the same standards as we would in reviewing a trial court's order granting or denying a motion for summary judgment. ([Code Civ. Proc.,] § 437c, subds. (c), (f); Certain Underwritersat Lloyd's of London v. Superior Court (2001)24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94]; Lazar v. HertzCorp. (1999) 69 Cal.App.4th 1494, 1506-1507
[82 Cal.Rptr.2d 368]; Travelers Casualty Surety Co. v.Superior Court (1998) 63 Cal.App.4th 1440, 1450
[75 Cal.Rptr.2d 54].) . . . [¶] `On appeal after a motion for summary judgment [or summary adjudication] has been granted [or denied], we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]' (Guz v. Bechtel National, Inc. (2000)24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P3d 1089]; seeSaelzler v. Advanced Group 400 (2001) 25 Cal.4th 763,767 [107 Cal.Rptr.2d 617, 23 P3d 1143].)" (Federal DepositIns. Corp. v. Dintino (2008) 167 Cal.App.4th 333, 344-345
[84 Cal.Rptr.3d 38].)
B. Limitations on Donative Transfers
In 1993, the Legislature added part 3.5 of division 11 to the Probate Code, section 21350 et seq. (part 3.5), which sets forth restrictions on donative transfers to supplement the common law of undue influence. (Rice v. Clark (2002)28 Cal.4th 89, 96-97 [120 Cal.Rptr.2d 522, 47 P3d 300](Rice).) Section 21350 lists "seven categories of persons who cannot validly be recipients of such donative transfers," including, inter alia, any person who has a fiduciary relationship with the transferor who transcribes the instrument or causes it to be transcribed (id., subd. (a)(4)); a care custodian of a dependent adult who is the transferor (id., subd. (a)(6)); and a relative of such fiduciary/transcriber or care custodian (id., subd. (a)(5), (7)). (Bernard v. Foley (2006) 39 Cal.4th 794,799-800 [47 Cal.Rptr.3d 248, 139 P.3d 1196].) (Bernard).) "`Instrument' means a will, trust, deed, or other writing that designates a beneficiary or makes a donative transfer of property." (§ 45.)
Section 21351 sets forth a number of exceptions and conditions to the applicability of section 21350. "Subdivisions (a), (b) and (c) of section 21351 *Page 1292 
except from invalidity, respectively, transfers to relatives and cohabitants of the transferor, transfer instruments reviewed by an independent attorney who counsels the transferor and executes a specified certificate, and transfers approved by the court on petition of a conservator. Subdivision (d) of section 21351 permits a transferee other than the instrument's drafter . . . to rebut section 21350's presumption of disqualification by showing, `upon clear and convincing evidence, excluding the testimony of any person described in subdivision (a) of Section 21350, that the transfer was not the product of fraud, menace, duress, or undue influence.'" (Rice, supra, 28 Cal.4th at pp. 97-98, citation omitted.)
"Once it is determined that a person is prohibited under section 21350 from receiving a transfer, `section 21351 creates a rebuttable presumption that the transfer was the product of fraud, duress, menace, or undue influence. A person who is prohibited from receiving a transfer under section 21350 may still inherit, if [he or she] successfully rebuts the section 21351 presumption (§ 21351, subd. (d)). In order to rebut the presumption, the transferee must present clear and convincing evidence, which does not include his or her own testimony, that the transfer was not the product of fraud, duress, menace, or undue influence. (§ 21351, subd. (d).)' [Citation.]" (Bernard, supra,39 Cal.4th at p. 800.)[5]
"[T]his statutory scheme supplements the common law doctrine that `a presumption of undue influence, shifting the burden of proof, arises upon the challenger's showing that (1) the person alleged to have exerted undue influence had a confidential relationship with the testator; (2) the person actively participated in procuring the instrument's preparation or execution; and (3) the person would benefit unduly by the testamentary instrument.' [Citations.]" (Bernard,supra, 39 Cal.4th at p. 800.)
Part 3.5 contains its own statute of limitations for an action to challenge a donative transfer. "An action to establish the invalidity of any transfer described in Section 21350 can only be commenced within the periods prescribed in this section as follows:
"(a) In case of a transfer by will, at any time after letters are first issued to a general representative and before an order for final distribution is made.
"(b) In case of any transfer other than by will, within the later of three years after the transfer becomes irrevocable or three years from the date the person bringing the action discovers, or reasonably should have discovered, the facts material to the transfer." (§ 21356.) *Page 1293 
C. Analysis
1. The 2001 grant deed
As an initial matter, appellant acknowledges the fiduciary and care custodian relationships that existed between Liverman and the decedent, and the care custodian relationship between Carmen and the decedent, within the meaning of section 21350. Appellant concedes that the 2001 grant deed was, within proper limitations periods, susceptible to a finding of invalidity under section 21350, subdivision (a)(5) and (7), because Jenny is related by blood to Liverman, who was a fiduciary and care custodian of decedent.
Appellant's only argument on appeal, as below, is the statute of limitations. He contends that this action, filed by the administrator on August 29, 2007, simply was brought too late.
Thus, we are called upon to interpret section 21356 to determine whether the administrator's action was timely filed. The parties have not cited, nor have we found, any cases considering this statute.
"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed `in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose."' [Citation.] In other words, "`we do not construe statutes in isolation, but rather read every statute `with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]"' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (Smith v. Superior Court (2006)39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)
Subdivision (a) of section 21356 applies to transfers by will, and thus is not at issue here. The dispute concerns section 21356, subdivision (b): "In case of any transfer other than by will, within the later of three years after the transfer becomes irrevocable or three years from the date the person bringing the action discovers, or reasonably should have discovered, the facts material to the transfer." *Page 1294 
Appellant contends the section is "ambiguous in its meaning; and to the extent that it is not ambiguous, giving it a meaning that would include the respondent would lead to absurd results in many cases, including this one." Appellant reasons that, during his lifetime, Hastie was the only person with standing to bring an action to invalidate the transfer, and Hastie himself was time-barred after three years, i.e., on March 29, 2005.[6] According to appellant, if we find that Steven is not barred by the statute of limitations, then a cause of action that was time-barred during the grantor's lifetime would be revived upon the appointment as personal representative of a total stranger to the decedent. This result is "absurd on its face," appellant contends, because the opportunity to revive an otherwise time-barred cause of action would lead to shopping for a personal representative. Appellant emphasizes the fact that Steven never had any relationship with Hastie, his family or friends, and asserts that he is the respondent in this matter only because the McCartys hired his brother, George, to represent their interests. "For instance," appellant argues, "one imagines that the McCarty brothers, being stepsons of the decedent, presumably have had at least some knowledge concerning the decedent and his affairs but have attempted to `insulate' themselves from being time-barred by choosing Mr. [Steven] Weinkauf to be the personal representative and plaintiff."
Appellant does not further explain his argument or elaborate on it by, for example, analyzing the statutory language or discussing legislative intent. Rather, he seems to assume that characterizing the result he opposes as "absurd on its face" is sufficient. Needless to say, it is not. As far as we can tell, appellant's argument appears to be either that where a transferor could have brought a cause of action but failed to do so during his or her lifetime, the transfer may not thereafter be challenged, or that a person bringing the action cannot be a stranger to the transferor.
We disagree with appellant's argument for a number of reasons. Beginning with the statutory language, which is "generally the most reliable indication of legislative intent" (Shirk v.Vista Unified School Dist. (2007) 42 Cal.4th 201, 211
[64 Cal.Rptr.3d 210, 164 P.3d 630]), we find nothing ambiguous or unclear in the language of subdivision (b) of section 21356. This section governs a challenge to a transfer made by means other than a will, such as a trust or the deeds involved herein. It provides a three-year limitations period. The three-year period starts to run either from the date the transfer becomes irrevocable or from the date "the person bringing the action" learns, or should have learned, of the material facts. Importantly, the section provides that the three-year period runs from the later of these *Page 1295 
two dates. Here, since the transfer became irrevocable while Hastie was still alive, the later date is three years from when the person bringing the action (the administrator) became apprised of the facts.
The statutory language does not support either of appellant's proposed interpretations. Interpreting the section as barring Steven's challenge to the transfers because Hastie could have brought an action himself but failed to do so would read the language "the later of," and everything after "or," out of subdivision (b) of section 21356. "A construction that renders some statutory language surplusage or redundant is to be avoided. [Citation.]" (Bernard, supra,39 Cal.4th at pp. 810-811.)
This interpretation also ignores the purpose of part 3.5 which, as the Supreme Court acknowledged, was "`to prevent unscrupulous persons in fiduciary relationships from obtaining gifts from elderly persons through undue influence or other overbearing behavior.'" (Bernard, supra,39 Cal.4th at p. 809, quoting Bank of America v. Angel View CrippledChildren's Foundation (1999) 72 Cal.App.4th 451, 456
[85 Cal.Rptr.2d 117] (Angel View).) "[T]he Legislature recognized a vital need to protect vulnerable transferors from the undue influence of trusted advisers undeserving of their trust." (Angel View, supra, 72 Cal.App.4th at p. 458.) It is unreasonable to conclude that the Legislature would intend to bar a challenge to such a transfer where the transferor was unable or unwilling to file suit against the recipient of the transfer. Indeed, this interpretation is completely at odds with the purpose of the statutory scheme.
The other interpretation appellant seems to advocate, that "the person bringing the action" cannot be a stranger to the transferor, also finds no support in the statutory language. The usual and ordinary meaning of this phrase, "the person bringing the action," contains no stranger prohibition. Indeed, viewing the phrase on its own, it contains no restrictions whatsoever with respect to who is an appropriate plaintiff.
This interpretation also cannot be reconciled with the overall statutory scheme in the context of proceedings to administer the estate of a person who dies intestate. Such proceedings are commenced by the filing of a petition for the appointment of an administrator. (§ 8000, subd. (a).) Administration of the estate begins when the court appoints an administrator and issues letters of administration. (§ 8400, subd. (a).) Among the rights and responsibilities of the administrator is the authority to bring actions and proceedings on behalf of the estate. Section 9820 provides, in part, that "[t]he personal representative may: [¶] (a) Commence and maintain actions and proceedings for the benefit of the estate." With respect to persons who may serve as administrator, section 8461 lists categories of persons in relationship to the decedent *Page 1296 
who are entitled, in order of priority, to be appointed administrator. (§ 8461 [for example, children of a predeceased spouse are 10th in line at subd. (j)].) The list of persons also includes the "[p]ublic administrator," "[creditors," and "[a]ny other person." (§ 8461, subds. (p), (q), (r).) Finally, section 8465 provides that a person otherwise entitled to appointment as administrator may nominate another person to act in that capacity.
In light of the foregoing, it is abundantly clear that "the person bringing the action" pursuant to section 21356, subdivision (b), can be the administrator of the estate following the death of the transferor and that this person might well be a stranger to the decedent. The McCartys, as children of Hastie's predeceased spouse, were entitled to be appointed administrators and were also free to nominate another person, whether known to Hastie or not, to serve in that capacity.
We flatly disagree with appellant that this is an absurd result. Appellant ignores the fact that the administrator of an estate does not represent his or her own interests, but rather is a fiduciary. A personal representative "'"`is an officer of the court and occupies a fiduciary relation toward all parties having an interest in the estate.'"'" (Estateof Martin (1999) 72 Cal.App.4th 1438, 1443
[86 Cal.Rptr.2d 37]; see also Estate of Karban (1953)118 Cal.App.2d 240, 245 [257 P.2d 649] [personal representative holds the decedent's estate as a stakeholder for delivery to those whom the court determines are entitled thereto].) If appellant's point is that the true wishes of the transferor/decedent may not be honored by a stranger, the answer lies in section 21351, taking the prescribed steps to avoid or rebut the presumption of fraud, duress, menace, or undue influence. (See Bernard,supra, 39 Cal.4th at p. 814 ["[S]ection 21351 provides a clear pathway to avoiding section 21350."].)
Finally, despite the suggestion in his briefs to us that the McCartys had some prior knowledge of the transfers to Jenny and appellant, knowledge they were trying to hide by nominating a stranger to act in their place as administrator, appellant made no attempt in the trial court to establish any such knowledge or to impute such knowledge to their nominee. Our review of the record revealed not a stitch of evidence to support this insinuation.[7]
Having rejected appellant's proposed interpretations of subdivision (b) of section 21356, we are left with the unambiguous statutory language which allows respondent to bring an action within three years of when he "discover[ed], or reasonably should have discovered, the facts material to" the *Page 1297 
transfers. (§ 21356, subd. (b).) Appellant presented no evidence in this regard and, thus, failed to establish that respondent's action to invalidate the deeds was time-barred.
2. The 2006 grant deed
The preceding analysis applies equally to the 2006 grant deed, and it necessarily follows that respondent was not time-barred from challenging the 2006 grant deed. Thus, we need not, and do not, address appellant's argument that the 2006 grant deed from Hastie to appellant was ineffective to sever the joint tenancy between Hastie and Jenny.
The trial court properly granted respondent's summary adjudication motion and properly denied appellant's summary adjudication motion.
 IV. DISPOSITION
The judgment is affirmed.
Kline, P. J., and Lambden, J., concurred.
Petition for a rehearing was denied August 20, 2010.
[1] For the sake of clarity, and meaning no disrespect, we will refer to Carmen Florez, her daughter Jenny Florez, and her son Timothy Florez by their first names. We will also refer to Timothy as appellant.
[2] Once again for the sake of clarity and meaning no disrespect, we will refer to George Weinkauf and his brother, Steven Weinkauf, by their first names. We will also refer to Steven as the administrator and/or respondent.
[3] All further unspecified statutory references arc to the Probate Code.
[4] Of the four defendants against whom this action was brought, only Timothy appeals.
[5] Appellant does not contend that he rebutted the presumption of invalidity or that any of the section 21351 exceptions is applicable here.
[6] The 2001 grant deed was dated June 13, 2001, and recorded on March 29, 2002. Appellant assumes that the statute of limitations began to run, at the latest, on the date the deed was recorded, and concludes that the limitations period expired for Hastie on March 29, 2005.
[7] The record did reveal, however, that both McCarty brothers apparently reside out of state. *Page 1298